**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VILOX AB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 24-1430-JLH |
| ) | |
| MOHAWK INDUSTRIES, INC., MENARD, ) | JURY TRIAL DEMANDED |
| INC., ) | |
| ) | |
| Defendants. ) | |
| MOHAWK INDUSTRIES, INC., MOHAWK ) | |
| CARPET DISTRIBUTION, LLC, IVC US, ) | |
| LLC, and UNILIN BV, ) | |
| ) | |
| Counterclaim-Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| VILOX AB, ) | |
| ) | |
| Counterclaim-Defendant. ) | |

**MOHAWK INDUSTRIES, INC'S ANSWER AND COUNTERCLAIMS**
**TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Defendant Mohawk Industries, Inc. ("Mohawk" or "Defendant"), by and through its counsel, hereby files its Answer and Counterclaims to VILOX AB's ("Plaintiff" or "VILOX") First Amended Complaint for Patent Infringement ("Complaint") (D.I. 11). Mohawk denies the allegations and characterizations in the Complaint unless expressly admitted in the following numbered paragraphs, which correspond to the numbered paragraphs of the Complaint.

## NATURE OF THE ACTION[1]

1.      Mohawk admits that VILOX filed an action for patent infringement arising out of the laws of the United States, 35 U.S.C. § 100 *et seq.*, including § 271(a). Mohawk denies VILOX has any valid claim thereunder.

## THE PARTIES

2.      Mohawk is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2 and therefore denies them.

3.      Mohawk is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3 and therefore denies them.

4.      Mohawk admits the allegations of paragraph 4.

5.      Mohawk is without knowledge sufficient to form a belief as to the allegations of paragraph 5, and therefore denies them.

6.      Mohawk admits the allegations of paragraph 6.

## VENUE, JURISDICTION AND JOINDER

7.      Mohawk admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      Mohawk does not contest venue for Mohawk Industries, Inc. for the purposes of this litigation.

9.      Mohawk does not contest personal jurisdiction over Mohawk Industries, Inc. for the purposes of this litigation.

10.     Mohawk denies the allegations of paragraph 10.

---

[1] Headings and subheadings are copied from the Complaint for ease of reference only. These headings and subheadings do not require any response and do not constitute an admission or denial of any purported fact or allegation. To the extent a response is required to any allegation in the Complaint's headings or subheadings, Mohawk denies those allegations.

11.     Mohawk denies the allegations of paragraph 11.

12.     Mohawk does not contest personal jurisdiction over Mohawk Industries, Inc. for the purposes of this litigation. Mohawk denies the remaining allegations of paragraph 12.

13.     Mohawk denies the allegations of paragraph 13.

14.     Mohawk does not contest joinder of Menard, Inc. ("Menards") as a defendant. Mohawk denies the remaining allegations of paragraph 14.

**THE PATENT-IN-SUIT**

15.     Mohawk admits that a purported copy of U.S. Patent No. 12,180,717 (the "'717 Patent" or "Asserted Patent") is attached to the Complaint as Exhibit A and that its name appears on the face of the patent as "RELEASABLE JOINING SYSTEM FOR FLOOR PANELS." Defendant denies any remaining allegations in paragraph 15.

16.     Mohawk denies the allegations of paragraph 16.

17.     Mohawk is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17 and therefore denies them.

18.     Mohawk is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18 and therefore denies them.

**COUNT I – [ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 12,180,717**

19.     Mohawk incorporates its responses to paragraphs 1-18 as if set forth fully herein.

20.     Mohawk admits that VILOX has brought a claim of infringement of the '717 Patent against Mohawk. Mohawk denies that VILOX has any valid claim thereunder and denies any remaining allegations of paragraph 20.

21.     Mohawk denies the allegations of paragraph 21.

22.     Mohawk denies the allegations of paragraph 22.

23.     Mohawk denies the allegations of paragraph 23.

24.     Mohawk admits that Menards uses, sells, and/or offers to sell in the United States the "Mohawk Home Expressions" product identified by VILOX as the Accused Product. Mohawk denies that VILOX has any valid claim of infringement by those products and denies any remaining allegations of paragraph 24.

25.     Mohawk is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 25 and therefore denies them.

26.     Mohawk admits that Exhibits C and D appear to show the "Mohawk Home Expressions" product listed for sale on the Menards® website and marked as "Made in the U.S.A." Mohawk denies that VILOX has any valid claim of infringement by those products and denies any remaining allegations of paragraph 26.

27.     Mohawk admits that Unilin BV ("Unilin") is an entity within the Mohawk group and that Mohawk is permitted to use the intellectual property of Unilin. Mohawk admits that VILOX has reproduced a portion of the official Unidrop® website that states the Unidrop® system is the "first one-piece fold-down that solves the problem of deinstallation." Mohawk denies that the Unidrop® click-locking system infringes the '717 Patent and denies any remaining allegations of paragraph 27.

28.     Mohawk admits that Unilin's official YouTube page contains a video posted on July 23, 2020 titled "UNIDROP explained – one-piece fold-down locking profile for flooring," available at https://www.youtube.com/watch?v=9NgagfmscQA, that shows an example of deinstallation and an exemplary overview of the Unidrop® click-locking system. Mohawk denies the remaining allegations of paragraph 28.

29.     Mohawk admits that Unilin is an indirect wholly-owned subsidiary of Mohawk.

30.    Mohawk admits that VILOX has reproduced images of what it claims to be Mohawk Home Expressions floor panels in both its Complaint and Exhibit F. Mohawk denies that those products infringe the '717 Patent and denies any remaining allegations of paragraph 30.

31.    Mohawk admits that VILOX has included the language of claim 1 of the '717 Patent in paragraph 31.

32.    Mohawk denies the allegations of paragraph 32.

33.    Mohawk admits the allegations of paragraph 33.

34.    Mohawk denies the allegations of paragraph 34.

35.    Mohawk admits the allegations of paragraph 35.

36.    Mohawk denies the allegations of paragraph 36.

37.    Mohawk admits the allegations of paragraph 37.

38.    Mohawk denies the allegations of paragraph 38.

39.    Mohawk admits the allegations of paragraph 39.

40.    Mohawk denies the allegations of paragraph 40.

41.    Mohawk admits the allegations of paragraph 41.

42.    Mohawk denies the allegations of paragraph 42.

43.    Mohawk admits the allegations of paragraph 43.

44.    Mohawk denies the allegations of paragraph 44.

45.    Mohawk admits the allegations of paragraph 45.

46.    Mohawk denies the allegations of paragraph 46.

47.    Mohawk admits the allegations of paragraph 47.

48.    Mohawk denies the allegations of paragraph 48.

49.     Mohawk denies the allegations of paragraph 49. Element 1.h of the '717 Patent states: "the female coupling tongue further comprising a lower recess, enabling the locking protrusion of the female coupling tongue to be depressed during joining of the panels."

50.     Mohawk denies the allegations of paragraph 50.

51.     Mohawk admits the allegations of paragraph 51.

52.     Mohawk denies the allegations of paragraph 52.

53.     Mohawk denies the allegations of paragraph 53.

54.     Mohawk admits that the Representative Accused Product utilizes a fold-down locking system marketed with the name "Unidrop." Mohawk admits that VILOX has reproduced a screenshot from what appears to be Unilin's website that markets the Unidrop® system as "[t]he first one-piece fold-down that solves the problem of deinstallation." Mohawk denies that these products infringe the '717 Patent and denies any remaining allegations in paragraph 54.

55.     Mohawk admits that VILOX has included language from marketing materials related to Unidrop® in paragraph 48. Mohawk denies that Unidrop® infringes the '717 Patent and denies any remaining allegations in paragraph 55.

56.     Mohawk denies the allegations of paragraph 56.

57.     Mohawk admits the allegations of paragraph 57.

58.     Mohawk denies the allegations of paragraph 58.

59.     Mohawk admits the allegations of paragraph 59.

60.     Mohawk denies the allegations of paragraph 60.

61.     Mohawk denies the allegations of paragraph 61.

62.     Mohawk admits that Menards uses, sells, offers for sale, or distributes within the United States the "Mohawk Home Expressions" product identified by VILOX as the Accused

Product. Mohawk denies that VILOX has any valid claim of infringement by those products and denies any remaining allegations of paragraph 62.

63.    Mohawk denies the allegations of paragraph 63.

## DEMAND FOR TRIAL BY JURY

Mohawk respectfully requests a trial by jury of all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Mohawk denies any liability to VILOX, denies that VILOX is entitled to any relief from Mohawk, and denies all of the allegations contained in VILOX's Prayer for Relief.

## MOHAWK'S DEFENSES

Mohawk alleges and asserts the following defenses in response to the allegations contained in the Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. Mohawk reserves all rights to allege additional defenses and counterclaims that become known through its investigation of Plaintiff's allegations during the course of discovery.

## FIRST DEFENSE
### (Failure to State a Claim)

1.    VILOX's Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE
### (Non-Infringement)

2.    Mohawk does not and has not infringed, under any theory of infringement including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement), either literally or under the doctrine of equivalents, any valid, enforceable claim of the '717 Patent.

## THIRD DEFENSE
### (Invalidity)

3.       The claims of the '717 Patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

4.       The claims of the '717 Patent are entitled to a priority date of no earlier than December 11, 2020.

5.       For example, to the extent that any claim of the '717 Patent is infringed by any Accused Product (they are not), every element of that claim is disclosed by, for example, (1) products utilizing the fold-down locking profile accused of infringement that were sold or offered for sale to the public as early as the second half of 2019; (2) the Unidrop® system as depicted in the YouTube video UNIDROP®, https://www.youtube.com/watch?v=8PC7exOm8uY, published January 8, 2020 (last accessed Feb. 11, 2025); (3) the Unidrop® system as described in the YouTube video UNIDROP® explained – one-piece fold-down locking profile for flooring, https://www.youtube.com/watch?v=9NgagfmscQA, published July 23, 2020 (last accessed Feb. 11, 2025); and (4) International Publication WO 2021/111210 assigned to Flooring Industries Limited, Sarl and claiming priority to U.S. Provisional Application No. 62/942,861 filed on December 3, 2019.

6.       Upon information and belief, the purported invention of the '717 Patent was patented, described in a printed publication, in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention.

7.       Upon information and belief, products utilizing the fold-down locking profile accused of infringement were sold or offered for sale to the public, in public use, or otherwise available to the public, including at least in the United States, as early as the second half of 2019.

**FOURTH DEFENSE**
**(Estoppel and/or Waiver)**

8.      VILOX's attempted enforcement of the '717 Patent against Mohawk is barred in whole or part estoppel and/or waiver.

**FIFTH DEFENSE**
**(Limitation on Damages)**

9.      VILOX's claims for damages are statutorily limited or barred by 35 U.S.C. §§ 286, 287, and/or 288.

10.      Under Section 287, VILOX is prohibited from recovering damages for activities alleged to have occurred before VILOX provided actual notice of activities alleged to infringe with respect to Mohawk's products. No entity is liable to VILOX for the acts alleged to have been performed before it received actual notice that they were allegedly infringing the '717 Patent.

11.      Upon information and belief, VILOX's claims are barred, in whole or in part, as a result of failure to mark by VILOX or its licensee, or otherwise give proper notice of infringement of the '717 Patent.

12.      VILOX has not pled compliance with 35 U.S.C. § 287 and, therefore, is barred from recovery of past damages.

13.      VILOX is barred from recovering costs associated with this action under 35 U.S.C. § 288 and also because VILOX cannot show any conduct that entitles VILOX to attorneys' fees or costs.

**SIXTH DEFENSE**
**(Prosecution History Estoppel)**

14.      VILOX's claims are barred in whole or in part by the doctrine of prosecution history estoppel based on statements, representations, disclaimers, admissions and/or disavowals made during prosecution of the patent applications resulting in the '717 Patent.

**EIGHTH DEFENSE**
**(No Equitable Entitlement to Injunctive Relief)**

15.    VILOX is not entitled to injunctive relief under any theory, including without limitation, because any alleged injury to VILOX is not immediate or irreparable, VILOX has an adequate remedy at law, and/or public policy concerns weigh against any injunctive relief.

**NINTH DEFENSE**
**(No Willful Infringement)**

16.    VILOX is not entitled to enhanced damages under 35 U.S.C. § 284 because VILOX has failed to meet, and cannot meet as a matter of law, the requirements for willful infringement.

**TENTH DEFENSE**
**(No Exceptional Case)**

17.    VILOX cannot prove that this is an exceptional case justifying an award of attorneys' fees against Mohawk pursuant to 35 U.S.C. § 285.

**ELEVENTH DEFENSE**
**(License or Exhaustion)**

18.    VILOX's claims are precluded in whole or in part to the extent that any allegedly infringing products or components thereof are covered by express or implied licenses to the '717 Patent, and/or under the doctrine of patent exhaustion.

**TWELFTH DEFENSE**
**(Waiver, Equitable Estoppel, Acquiescence, Unclean Hands)**

19.    VILOX's claims are barred, in whole or in part, or its remedies limited, by the doctrines of waiver, implied waiver, equitable estoppel, acquiescence, and/or unclean hands.

**THIRTEENTH DEFENSE**
**(Ensnarement)**

20.    VILOX cannot assert the claims of the '717 Patent under the doctrine of equivalents to cover the Accused Products because each such an asserted claim scope would encompass or ensnare the prior art.

**FOURTEENTH DEFENSE**
**(Standing)**

21.　　To the extent that VILOX did not, or does not, hold all substantive rights to bring suit and to exclude others from practicing the claims of the '717 Patent, VILOX's claims are barred by lack of standing.

**FIFTEENTH DEFENSE**
**(Reservation of Rights)**

22.　　Mohawk reserves the right to add any additional defenses (including but not limited to inequitable conduct) or counterclaims which may now exist or in the future may be available based on discovery and further factual investigation in this case.

## COUNTERCLAIMS

Mohawk Industries, Inc., Mohawk Carpet Distribution, LLC, IVC US, LLC, and Unilin BV (collectively, "Counterclaim-Plaintiffs"), through their undersigned counsel, hereby counterclaim and allege against Plaintiff and Counterclaim-Defendant VILOX AB ("VILOX" or "Counterclaim-Defendant") as follows:

**PARTIES**

1.　　Mohawk Industries, Inc. ("Mohawk Industries") is a corporation organized under the laws of the State of Delaware having its principal place of business in Calhoun, Georgia 30701.

2.　　Mohawk Carpet Distribution, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Calhoun, Georgia 30701.

3.　　IVC US, LLC is a limited liability company organized under the laws of the State of Georgia having its principal place of business in Calhoun, Georgia 30701.

4.　　Unilin BV ("Unilin") is a foreign corporation organized under the laws of Belgium having its principal place of business located at Ooigemstraat 3, 8710 Wielsbeke, Belgium.

5.      VILOX avers that it is a foreign company organized under the laws of Sweden, with its principal place of business located at Mangårdsgatan 63, 25667 Helsingborg Sweden.

## JURISDICTION AND VENUE

6.      Counterclaim-Plaintiffs' declaratory judgment counterclaims arise under the patent laws of the United States, Title 35, United States Code. The Court has subject matter jurisdiction over them under 28 U.S.C. §§ 1331, 1338, 2201, and 2202 as they arise under an Act of Congress relating to patents, patent infringement, and the Declaratory Judgment Act.

7.      Counterclaim-Plaintiffs' federal unfair competition counterclaim arises under 15 U.S.C. § 1121 and 28 U.S.C. § 1331.

8.      There is complete diversity between Counterclaim-Plaintiffs and VILOX and the amount in controversy exceeds $75,000. This Court has subject matter jurisdiction over these disputes pursuant to 28 U.S.C. §§ 1332(a)(l).

9.      The Court has supplemental jurisdiction over Counterclaim-Plaintiffs' counterclaims of tortious interference with a business opportunity, common law unfair competition, and violation of the Delaware Uniform Deceptive Trade Practices Act (6 Del. C. § 2532(a)) pursuant to 28 U.S.C. § 1367(a) because, as set forth below, these claims are so related to the claim(s) over which the Court has original jurisdiction that the claims form part of the same case or controversy under Article III of the United States Constitution.

10.     The Court has personal jurisdiction over VILOX because VILOX has had purposeful contacts with this district sufficient to permit the exercise of personal jurisdiction over it, including by targeting its bad faith efforts to assert a claim of infringement of the '717 Patent in this district. VILOX has further consented to personal jurisdiction by commencing an action alleging patent infringement in this District, as set forth in VILOX's Complaint.

11.     Venue in this District is appropriate over these Counterclaims because VILOX has consented to the propriety of venue in this District by filing its claims for patent infringement in this District, in response to which these Counterclaims are asserted.

## BACKGROUND

**Mohawk Industries Is a Flooring Industry Leader**

12.     Mohawk Industries and its subsidiaries comprise a global flooring company that designs, develops, manufactures, and markets innovative flooring products to enhance residential and commercial spaces around the world.

13.     Mohawk Industries and its subsidiaries have become one of the largest suppliers of premium carpet, rugs, laminate, sheet vinyl, luxury vinyl tile and wood flooring in North America. Mohawk Industries and its subsidiaries' products are distributed to and sold by retailers throughout the United States. Many of their products are manufactured in its facilities located across the country.

14.     Mohawk Industries, together with its subsidiaries (including (Unilin), has spent millions of dollars developing new and innovative flooring products. Mohawk Industries and its subsidiaries' industry-leading innovation has yielded products and technologies that differentiate the Mohawk brand in the marketplace and satisfy a full range of flooring-related remodeling and new construction requirements.

15.     Unilin is an indirect wholly-owned subsidiary of Mohawk Industries. Unilin is a global source for interior design and construction industry solutions. Over the years, Unilin has built and maintained an extensive patent portfolio protecting its groundbreaking and innovative technologies. Unilin manages more than 3800 patents and commercializes its intellectual property rights by granting licenses across different industries, including flooring, manufacturing, and furniture.

13

16.     Mohawk Industries and its subsidiaries' groundbreaking innovations include patented features that have become important throughout the industry. Specifically, Mohawk Industries and its subsidiaries have led the industry in innovation related to premium rigid flooring products with a stone-plastic composite ("SPC") core. Mohawk Industries and its subsidiaries have perfected these products to ensure that they perform in any climate and in any room in the household.

17.     Mohawk Industries and its subsidiaries consistently introduce a multitude and variety of new products and improves on its existing products.

18.     Mohawk Industries and its subsidiaries intentionally protect their investment in these innovations through an extensive patent portfolio.

**Mohawk Industries Subsidiaries Began Commercializing the Fold-Down Locking Profile That VILOX Has Accused of Infringement in Mid-2019**

19.     In mid-2019, Mohawk Industries subsidiaries began commercializing the fold-down locking profile that VILOX has accused of infringement in its Complaint (i.e., the profile identified in the Representative Accused Product). *See* D.I. 11 at ¶¶ 27, 28, 30.

20.     As early as June 2019, the accused fold-down locking profile was manufactured at an Avelgem, Belgium manufacturing plant on behalf of Unilin using a new P142 milling profile.

21.     On or around June 12, 2019, the Avelgem plant began production of the Artens Camden Clic Smoked Oak flooring product using the P142 profile.

22.     On or around June 21, 2019, the French company Leroy Merlin placed an order for the Artens Camden Clic Smoked Oak flooring product. Ex. M (Factuur 9190080146).

23.     One example of a flooring product manufactured on or around June 25, 2019 using the P142 profile (then called "DropExpress") is reproduced below.



Ex. L (P142-01 Profile).

24.    In or around late July 2019, the Dalton, Georgia manufacturing plant of IVC, US LLC ("IVC") finished installing the new P142 milling profile for manufacturing the short sides of certain flooring panels.

25.    The P142 profile was used to manufacture fold-down flooring products in the United States.

26.    A comparison of the Mohawk Home Expressions floor panel VILOX has accused of infringement in its Complaint and a product made using the P142 profile is shown below.

| Mohawk Home Expressions (D.I. 11, Ex. F) | Ex. L (P142-01 Profile) |
|---|---|



27.    Thus, as clearly shown from the above comparison, the fold-down locking profile that VILOX has accused of infringement in its Complaint has been on sale or otherwise available

15

to the public at least as of June 2019, several months prior to VILOX's earliest alleged priority date.

**Unilin Invented an Innovative Fold-Down Locking Profile**

28.     In parallel, in 2019, engineers at Unilin began to research and develop a first-of-its-kind, one-piece, fold-down locking profile for floor boards to solve the problem of more easily uninstalling locking floor panels.

29.     End users may seek to uninstall floor panels in case a single panel is damaged, or when an entire flooring system must be removed to a new location. While traditional one-piece, fold-down locking systems required shifting already-installed boards horizontally to correctly detach from each other, sometimes with great force, Unilin's new locking profile enabled end users to disassemble boards more easily by angling them out or by using a turning movement, without damaging the board.

30.     The Unilin engineers' efforts culminated in the filing of a series of patent applications with the U.S. Patent and Trademark Office and other international patent offices. U.S. Provisional Application No. 62/942,861 (the "'861 Provisional Application") is one such example of Unilin's efforts to protect its innovative locking profile intellectual property. The '861 Provisional Application was filed with the U.S.P.T.O. on December 3, 2019. Ex. A (Certified copy of U.S. Prov. Appl. No. 62/942,861) at Cover. The Applicant for the '861 Provisional Application was Flooring Industries Limited, SARL. Flooring Industries Limited, SARL has been absorbed into Unilin since January 1, 2024.

31.     The '861 Provisional Application, which published as International Publication WO 2021/111210, describes a floor panel with a novel locking profile that "can be uninstalled in an easy way. E.g., by unlocking and removing – by means of a turning movement – a row of

panels," which is "made possible by the configuration of the coupling parts at the second pair of opposite edges." *Id.* at [0010]; *see also id.* at [0006].

32.    An example of Unilin's claimed locking profile is reproduced below. *Id.* at FIG. 7.



Ex. A at FIG. 7.

33.    Unilin publicized the Unidrop® system in trade publications and websites starting at least in January 2020. For example, Floor Covering Weekly published an article on January 8, 2020 announcing that Unilin's "new fold-down locking technology called 'Unidrop' makes installing a floor even more convenient by being the first one-piece fold-down system that can be disassembled by angling-out." *Unilin announces Unidrop locking technology* (Jan. 8, 2020), https://www.floorcoveringweekly.com/main/topnews/unilin-announces-unidrop-locking-technology-28274 (last accessed Feb. 11, 2025).

34.    On January 8, 2020, Unilin also published a video on its official YouTube page describing its patented Unidrop® technology as "the first fold-down system that can be disassembled by angling-out," which has "superior locking strength and tight seams thanks to

active locking." UNIDROP®, https://www.youtube.com/watch?v=8PC7exOm8uY (last accessed Feb. 11, 2025).

35.    A screenshot from the UNIDROP® video showing an example of the Unidrop® locking profile is reproduced below.



UNIDROP®, https://www.youtube.com/watch?v=8PC7exOm8uY (last accessed Feb. 11, 2025).

36.    From January 10-11, 2020, Unilin showcased the Unidrop® system to a large audience of flooring industry participants at the DOMOTEX trade fair in Hannover, Germany. A photograph of Unilin's DOMOTEX exhibit is reproduced below.



37.    On July 23, 2020, Unilin published another video on its official YouTube page providing additional details about the Unidrop® system's locking mechanism. For example, the video describes that "the profile ensures horizontal locking in two places and vertical locking in three places" and that Unidrop® is "easy to be de-installed by angling." UNIDROP® explained – one-piece        fold-down        locking        profile        for        flooring, https://www.youtube.com/watch?v=9NgagfmscQA    (last    accessed    Feb.    11,    2025)    (the "UNIDROP® explained video").

38.    A screenshot from the UNIDROP® explained video showing one example of the Unidrop® locking profile is reproduced below.



UNIDROP® explained – one-piece fold-down locking profile for flooring, https://www.youtube.com/watch?v=9NgagfmscQA at 7:11 (last accessed Feb. 11, 2025).

39.    Thus, Unilin's innovative Unidrop® locking profile was patented at least as early as December 2019 and in public use and/or available to the public at least as early as January 2020.

40.    Since its release, Unidrop® has enjoyed extensive commercial success in the United States and abroad. Industry leaders were impressed with the innovation, and many sought to license the technology from Unilin. As of the filing of Mohawk Industries' Answer and Counterclaims, Unilin's Unidrop® technology has been licensed to numerous licensees who have manufactured and/or sold products utilizing the Unidrop® system.

**VILOX Obtains the Invalid '717 Patent**

41.    Around the same time that Unilin launched its Unidrop® system, but after Mohawk Industries subsidiaries began commercializing the fold-down locking profile that VILOX has accused of infringement in its Complaint, VILOX filed the patent applications that led to the issuance of the '717 Patent.

42.    On December 13, 2019, Vilox filed Swedish patent application SE 1951462 (the "Swedish Application"), titled "Releasable joining system for floor panels." Ex. B (SE 1951462) at Cover.

43.    The '717 Patent claims priority to the U.S. national stage application of International Application No. PCT/SE2020/051203, filed December 11, 2020, designating the United States. '717 Patent at 1:8-12. The PCT Application claims priority to the Swedish Application and published as International Publication WO 2021/118448 (the "'448 Publication"). *Id*.

44.    The Swedish Application describes a "joining system [that] further comprises a coupling release channel 41 being part of the male and female coupling for receiving a coupling release rod 110, when the male coupling is locked in the female coupling (which is the state shown in fig. 3)." Ex. B (SE 1951462) at 17:9-12.

45.    Figure 3 of VILOX's Swedish Application is reproduced below. *Id*. at FIG. 3.



Ex. B (SE 1951462) at FIG. 3.

46.    The Swedish Application makes no mention of the "release by . . . pivoting the second floor panel in relation to the first floor panel" feature claimed in the '717 Patent. *See* '717 Patent, cl. 1.

47.    As explained below in Paragraphs 53-54, it was not until December 11, 2020 that VILOX described a locking profile releasable by pivoting one panel in relation to another in any application leading to the '717 Patent. *See* Ex. C (WO 2021/118448) at 6:5-14.

48.    VILOX holds itself out as "an experienced team including people with long experience from high positions within leading licensing companies of floor clicking system." *About Us*, VILOX, https://vilox.com/about/ (last accessed Feb. 11, 2025).

49.    Upon information and belief, VILOX monitors the activities of and products released by its competitors, such as Mohawk Industries' subsidiaries and Unilin.

50.    Thus, upon information and belief, VILOX has been aware of the flooring products of Mohawk Industries' subsidiaries comprising the fold-down locking profile VILOX has accused of infringement in its Complaint since the products' public use, sale, offer for sale, and/or public availability in the second half of 2019.

51.    Upon information and belief, VILOX was aware of the features of Unidrop® at least as early as January 8, 2020, when industry news sources such as Floor Covering Weekly advertised its debut and when Unilin published a YouTube video depicting the Unidrop® system.

52.    Upon information and belief, it was not until after VILOX became aware of the innovative Unidrop® system's angling-out disassembly feature that VILOX added a written description to its pending patent application relating to uninstalling its floor panels via pivoting or angling out of one panel in relation to the other.

53.    The '448 Publication, filed on December 11, 2020 as PCT/SE2020/051203, is titled "Releasable joining system for floor panels, a floor panel, a floor system, a method for laying and a method for releasing a floor panel." Ex. C (WO 2021/118448) at Cover.

54. The '448 Publication describes, for the first time in the applications to which the '717 Patent claims priority, that a "second panel may be released from the first panel by pivoting the second panel around the male coupling tongue," in addition to "by means of the coupling release tool." *Id*. at 6:5-14.

55. The '448 Publication was published on June 17, 2021. *Id.* at Cover.

56. The '717 Patent issued on December 31, 2024 from U.S. Patent Appl. No. 17/783,897.

57. Claim 1 of the '717 Patent recites "the fold-down joining system being configured for release by a coupling release tool or by pivoting the second floor panel in relation to the first floor panel."

58. Claim 1 of the '717 Patent is not entitled to claim priority to the December 13, 2019 filing date of the Swedish Application because the Swedish Application fails to include a written description of the claimed pivoting of the second floor panel in relation to the first floor panel that VILOX accuses Mohawk of infringing.

59. The '717 Patent is entitled to claim priority, at the earliest, to the December 11, 2020 filing date of the '448 Publication, in which the pivoting feature was mentioned for the first time. Thus, Mohawk Industries subsidiaries' flooring products comprising the accused fold-down locking technology, and the Unidrop® system, which was described publicly as early as January 8, 2020, are prior art to the '717 Patent's claims.

60. Upon information and belief, VILOX was aware of prior art anticipating and/or rendering obvious the claims of the '717 Patent at least as of the date of the filing of its Complaint. At least as of October 8, 2024, VILOX was aware of WO 2021/111210 (i.e., "D3") and admitted that it was "filed before but published after the filing date of" the European counterpart of the '717

Patent. Ex. G (European Search Opinion) at 1; Ex. H (Vilox Response to Search Opinion (Oct. 8, 2024)) at 4. VILOX took the position that WO 2021/111210 "does relate to a joining system that is configured for release by 'a turning movement.'" Ex. H (Vilox Response to Search Opinion) at 4.

> D3 is a so-called Art. 54(3) document, i.e. filed before but published after the filing date of the present invention and is as such only relevant for assessing novelty. D3 does relate to a joining system that is configured for release by "a turning movement". However, amended

Ex. H (Vilox Response to Search Opinion) at 4.

61.     Upon information and belief, Bobby Markovski, the CEO of VILOX, attended flooring industry trade shows at which the Unidrop® system was showcased, was subscribed to trade publications or magazines in which the Unidrop® system was described, and monitored Unilin's official publications, such as Unilin's YouTube videos promoting the Unidrop® system, and was thus aware of the public availability of VILOX's alleged invention prior to December 11, 2020.

62.     For example, in its Complaint, VILOX cites to Unilin's UNIDROP explained YouTube video, which it acknowledges was "posted on Unilin Technologies official YouTube site July 23, 2020," to support its allegation that the features of Unidrop® are "found in the Accused Products as well as in the asserted claims of the '717 Patent." *See, e.g.*, D.I. 11, ¶ 28.

**History of Litigation Between the Parties**

63.     This is not the first time the parties have crossed paths in litigation. Unilin brought an action against VILOX in the Eastern District of Texas for infringement of U.S. Patent Nos. 9,890,542; 11,505,949; 11,933,055; and 12,012,764. *Unilin BV v. Vilox Sweden AB, et al.*, No. 2:24-cv-00040-JRG, D.I. 1 (Jan. 24, 2024) (the "Texas Action").

64.    On December 31, 2024, the day the '717 Patent issued, VILOX filed the instant suit against Mohawk accusing it of infringement of the '717 Patent.

**VILOX Wrongfully Interferes with the Business Relationships of Mohawk Industries and Its Subsidiaries, Including Unilin**

65.    Immediately after filing the Complaint in this case, VILOX initiated a campaign to interfere with existing and potential business relationships of Mohawk Industries and its subsidiaries, including Unilin, by asserting falsely and in bad faith that the Unidrop® system infringes the invalid '717 Patent.

66.    VILOX issued a press release announcing the instant lawsuit on its website, which contained false and misleading statements. *VILOX files major U.S. lawsuit against Mohawk* (Jan. 1, 2025), https://vilox.com/vilox-files-major-u-s-lawsuit-against-mohawk/ (last accessed Feb. 11, 2025).

67.    The press release, published on January 1, 2025, states that "products utilizing the drop lock installation system which Unilin markets as 'Unidrop' are in clear infringement of one of VILOX' United States patents, US 12,180,717," and that VILOX will "continue to undertake appropriate legal action against all infringements." *Id*.

68.    As explained in Paragraph 2 of Mohawk Industries' Defenses, the Accused Products in this litigation do not have all elements of any Asserted Claim and therefore do not infringe any Asserted Claim of the '717 Patent.

69.    As explained in Paragraphs 3-7 of Mohawk Industries' Defenses, the asserted claim of the '717 Patent is invalid as anticipated and/or rendered obvious by at least Unilin's Unidrop® system and Unilin's own patent applications.

70.    The press release misleads current and prospective customers of Mohawk Industries' subsidiaries, including Unilin, into believing that the Unidrop® system infringes the

'717 Patent. However, VILOX's assertion that the Unidrop® system is "in clear infringement" of the Asserted Patent is false because the Accused Products do not infringe the '717 Patent and because the '717 Patent is invalid. Contrary to VILOX's assertion, Unilin developed and publicized the Unidrop® locking profile at issue in this case long before VILOX described the claimed pivoting-out feature in the '448 Publication.

71.    Upon information and belief, VILOX knew that the statement "the drop lock installation system which Unilin markets as 'Unidrop' [is] in clear infringement of" the '717 Patent was false based upon its own pre-suit investigation and understanding of how the Representative Accused Product and Unidrop® system operate, and based upon its knowledge of the availability of the Unidrop® system prior to the earliest supported priority date of the '717 Patent.

72.    Upon information and belief, VILOX knew that it was misleading customers into believing that the Unidrop® system infringes a valid patent.

73.    Notwithstanding these facts, VILOX then continued its campaign to spread false accusations of infringement by contacting the existing customers of Mohawk Industries' subsidiaries (such as Dal-Tile Corporation ("Dal-Tile")), and Unilin (including Unilin licensees) and providing at least some of them with correspondence alleging infringement of the '717 Patent.

74.    The officers and employees of Mohawk Industries and its subsidiaries, including Unilin, have expended significant time and energy addressing VILOX's spurious accusations with current and prospective customers of Mohawk Industries' subsidiaries, including Unilin.

75.    One example of VILOX's campaign against Mohawk Industries of which Mohawk Industries and/or Unilin are currently aware relates to a Unilin licensee that does not currently manufacture, use, sell, offer to sell, or import any product utilizing the Unidrop® system in the United States and thus cannot be liable for infringement. A representative from that company

informed Unilin, Mohawk Industries, and/or other subsidiaries of Mohawk that they received a letter from VILOX's counsel about its alleged infringement of the '717 Patent on January 3, 2025; a follow-up email from the VILOX legal team on January 13, 2025; and a request on January 23, 2025 to meet with the licensee at the upcoming Surfaces International trade show, to be held from January 28-30, 2025, to "reach[] an agreement regarding [its] use of VILOX IPR."

76.    VILOX has threatened other customers and licensees of Mohawk Industries' subsidiaries and/or Unilin with allegations of infringement of the '717 Patent, despite these customers and licensees not using, manufacturing, importing, selling, or offering to sell products utilizing the Unidrop® system in the United States.

77.    Another example of VILOX's campaign against Mohawk Industries of which Mohawk Industries and/or Unilin are currently aware relates to a letter from VILOX's U.S.-based legal counsel to Dal-Tile on January 3, 2025 stating that Unidrop® "may infringe VILOX's granted U.S. Patent No. 12,180,717." Ex. D (Jan. 3, 2025 Ltr. from J. Fitzsimmons to Dal-Tile). VILOX's letter asked Dal-Tile to "confirm the extent to which you are in fact engaged in any of the above-mentioned activities and, if so, inform VILOX of the volume (in square meters) of products with the Unidrop click system that you sold/produced in and/or sold to the U.S. starting December 1, 2024, in order to VILOX to consider an appropriate resolution (including potentially calculating a license fee)." *Id*. VILOX's letter demanded a response by January 10, 2025. *Id*.

78.    VILOX's letter to Dal-Tile demanded information relating to sales of Dal-Tile's products prior to the December 31, 2024 issuance date of the '717 Patent.

79.    As yet another example of VILOX's bad-faith efforts to interfere with Mohawk Industries and Unilin's business relationships, one U.S. purchaser of products utilizing the Unidrop® system informed Mohawk Industries and/or Unilin that VILOX has been harassing its

customers with a stream of calls and emails alleging infringement of the '717 Patent such that the customers have stated they will stop selling the Unidrop® products due to VILOX's intimidation tactics. Moreover, VILOX intimidated a customer of the same U.S. purchaser by threatening to serve it with a complaint and summons if the customer attended the then-upcoming International Surface Event ("Surfaces") trade show in Las Vegas, Nevada on January 28, 2025.

80.    As yet another example, Mohawk Industries and Unilin are aware of a wholesale distributor of flooring products that has been repeatedly harassed by VILOX's allegations of infringement. VILOX has stated that even if Mohawk Industries vigorously defends against VILOX's allegations of infringement, the distributor's continued sale of Unidrop® products "places your company in a precarious position since the responsibility for sales of these products ultimately resides with you, not Unilin." Rather than specifically identify the products it accuses of infringement or provide an analysis of what specific features of the products allegedly embody the asserted claims (or even identify an allegedly infringed claim), VILOX unreasonably demanded resolution of the dispute through the signing of a non-assertion agreement. *Id.*

81.    VILOX's letters to and interactions with customers of Mohawk Industries' subsidiaries, including Unilin, constitute a bad-faith attempt to enforce VILOX's invalid patent. VILOX's assertions of infringement directed at Mohawk Industries and Unilin's existing and potential customers are objectively baseless because they fail to identify a specific accused product, let alone conduct an analysis sufficient to identify the specific features that are allegedly covered by the claims of the '717 Patent as evidenced by, for example, the mapping of the asserted claims to the specific features of the accused products. Instead, VILOX merely sent form letters to a number of customers of Mohawk Industries' subsidiaries, including several customers that do not sell products utilizing the Unidrop® system in the United States.

82.    VILOX's assertions are further objectively baseless and were intended to interfere with Mohawk Industries and Unilin's business relationships rather than enforce any legitimate patent rights because VILOX's letters seek information about allegedly infringing products sold prior to the issue date of the '717 Patent and because VILOX seeks to extra-judicially enforce its invalid U.S. patent based on non-U.S. sales of the accused Unidrop® system. This is especially true where VILOX is approaching customers and licensees who do not even use the Unidrop® system, yet VILOX continues to assert that they are required to sign agreements requiring payment to VILOX for the sale of products using said Unidrop® system. *See* Paragraphs 75, 99.

83.    VILOX's actions further evidence bad faith because by falsely accusing customers of Mohawk Industries' subsidiaries, including Unilin, VILOX intended to interfere with their legitimate business relationships.

84.    Upon information and belief, VILOX and its representatives have had interactions with other existing and prospective customers of Mohawk Industries' subsidiaries including Unilin, informing them of the instant litigation and falsely accusing products utilizing Unidrop® of infringement, as part of its campaign to spread its false accusation of infringement.

85.    In addition to its false statement about the Unidrop® system being "in clear infringement" of the Asserted Patent, VILOX's press release stated that it "will continue to undertake appropriate legal action against all infringements." *VILOX files major U.S. lawsuit against Mohawk* (Jan. 1, 2025), https://vilox.com/vilox-files-major-u-s-lawsuit-against-mohawk/ (last accessed Feb. 11, 2025). This statement suggests that VILOX will pursue litigation against customers of Mohawk Industries' subsidiaries, including Unilin.

86.    In addition to its statement that Unidrop® products "may infringe VILOX's granted U.S. Patent No. 12,180,717," VILOX's correspondence with Mohawk Industries and Unilin's

existing and potential customers demanded information from them "in order for VILOX to consider an appropriate resolution." This statement also suggests that VILOX might pursue litigation against customers of Mohawk Industries' subsidiaries, including Unilin.

87.    On January 12, 2025, counsel for Mohawk Industries and Unilin sent a letter to VILOX explaining that "the accused Unidrop® locking system features accused of infringement were publicly disclosed by Mohawk before the earliest priority date to which the asserted claims are entitled." Ex. E (Jan. 12, 2025 Ltr. from S. Abhyankar to J. Fitzsimmons). Counsel for Mohawk Industries and Unilin additionally informed VILOX that "the accused Unidrop® system was on the market before VILOX filed claims." *Id*.

88.    Mohawk Industries and Unilin's letter to VILOX informed VILOX of (1) the public availability of the fold-down locking profile that VILOX has accused of infringement in its Complaint, and (2) the public availability of Unidrop® technology prior to the December 11, 2020 date to which the claims are entitled to claim priority. *Id*.

89.    Upon information and belief, as early as the second half of 2019 but no later than January 12, 2025, VILOX was aware that its '717 Patent is invalid under at least 35 U.S.C. § 102 and § 103 due to the public availability, sale and/or offer for sale of the Unidrop® system and due to the sale of products comprising the accused fold-down locking technology. Thus, VILOX's assertion of the '717 Patent in the instant litigation and its extra-judicial attempts to enforce its invalid patent are objectively baseless and made in bad faith.

90.    Despite its knowledge of the '717 Patent's invalidity, VILOX continued to contact Mohawk Industries and Unilin's customers, including by approaching them at the BAU trade fair in Munich, Germany, held from January 11-15, 2025. For example, on January 15, 2025, after counsel for Mohawk Industries and Unilin informed VILOX of the public availability of the fold-

down locking profile that VILOX has accused of infringement and the Unidrop® system, Aron Skogman from VILOX's legal team emailed a licensee of Unilin, Jiangsu Success Wood Products Co., Ltd. ("Jiangsu Success"), and stated that "[y]esterday VILOX visited your booth at the BAU exhibition and received confirmation from your company representatives that your company offers the Unidrop system to U.S." Mr. Skogman's email continued to state that "what must be done in order for us to resolve this issue is for you to provide us with . . . "(i) the volumes (in sqm) sold by you and your affiliates . . . to the US, and (i) [sic] a confirmation that you wish to solve this matter amicably."

91.     At the same BAU trade fair, VILOX distributed a draft non-assertion agreement to certain of Mohawk Industries and Unilin's current and prospective customers, including at least Decno Group Ltd, stating that "VILOX has filed a lawsuit in the United States District Court for the District of Delaware against Mohawk Industries, Inc., alleging that products using the 'Unidrop' click-locking system infringe on VILOX' granted U.S. patent no. 12,180,717." Ex. F (Non-assertion Agreement). VILOX's non-assertion agreement sought "USD 0.7 for every square meter of Products sold by Beneficiary [(defined as Decno Group Ltd.)] or any of its Affiliates" without providing any analysis sufficient to identify the specific features of the Products that are allegedly covered by the claims of the '717 Patent as evidenced by, for example, the mapping of the asserted claims to the specific features of the Products. *Id*.

92.     In response to VILOX's continued threats to customers and licensees, counsel for Mohawk Industries again sent correspondence to VILOX on January 27, 2025 urging VILOX to cease its tortious harassment campaign and interference with the business relationships of Mohawk Industries and its subsidiaries. *See* Ex. I Correspondence from S. Abhyankar to A. Skogman (Jan. 27, 2025). In this letter, counsel for Mohawk Industries and Unilin again reiterated to VILOX that

(1) the fold-down locking profile that VILOX has accused of infringement was sold prior to the earliest alleged priority date of the '717 Patent and that (2) the Unidrop® system was publicly available before the December 11, 2020 priority date to which the '717 Patent is entitled . Mohawk Industries filed its Answer and Counterclaims to VILOX's original Complaint on the same day. *See* D.I. 9.

93.    Despite repeated requests to cease its harassment campaign, VILOX continued its attempts to extra-judicially enforce its invalid '717 Patent against the customers and potential customers of Mohawk Industries and its subsidiaries, including against customers that VILOX knows do not make, use, import, sell, or offer to sell the Unidrop® system in the United States. Namely, VILOX engaged in significant baseless harassment at the Surfaces trade show which took place in Las Vegas from January 28-30, 2025.

94.    As one example, on January 29, 2025, Oliver Wallen, VILOX's Director of Sales & Marketing, approached the booth of Unilin customer Anhui Otai New Material Co. Ltd. ("Otai") to demand that the Otai representative sign a non-assertion agreement that Mr. Wallen provided. The Otai representative, Mr. Dean Zhan, informed Mr. Wallen that Otai does not make products using the accused Unidrop® system, and clarified that they instead make products using the Uniclic® system. Despite being informed that Otai does not make the accused Unidrop® system, Mr. Wallen continued to demand that Otai sign the non-assertion agreement due to Otai's display of Unilin's marketing materials promoting the Unidrop® system.

95.    Mr. Wallen's insistence on Otai signing an agreement of non-assertion of the '717 Patent was objectively baseless and in bad faith. Not only was VILOX informed of the invalidity of its asserted patent through earlier correspondence with counsel for Mohawk Industries and Unilin, but Mr. Wallen had also been informed that Otai does not make any products accused of

infringing the patent at issue. No reasonable patentee would realistically expect to secure relief against an alleged infringer that does not make, use, import, sell, or offer to sell products in the United States that are alleged to practice the asserted patent. Thus, VILOX's interactions with Mohawk Industries and Unilin's customers veer far beyond the mere communication of VILOX's intent to enforce its patent rights, and instead constitute a pattern of harassment designed to denigrate and harm the reputation of Mohawk Industries and its subsidiaries, including Unilin.

96.    VILOX has also approached and/or sent emails to other customers and/or licensees, including Jiangsu Success. VILOX contacted Jiangsu Success, threatening them with litigation and pointing specifically to their recent claims against Menards. VILOX continues to demand that these customers and/or licensees sign agreements requiring payment to VILOX for their sale of Unidrop® products.

97.    Upon information and belief, on January 30, 2025, Mr. Wallen demanded that another of Unilin's licensees, Keo Global Industries LLP ("Keo"), remove from its exhibit a promotional banner which shows that Keo is a Unilin licensing partner and that displays the Unidrop® logo, but also promotes other products. When the exhibitor confirmed with Mr. Wallen that Keo Flooring does not produce products using Unidrop® technology, Mr. Wallen nonetheless continued to harass the exhibitor in front of customers and potential customers of Keo Surfaces.

98.    VILOX's harassment of customers at Surfaces led to a screaming match between a VILOX representative and a customer of Mohawk Industries and/or Unilin. Specifically, on January 30, 2025,  VILOX representatives returned to the Keo booth to confront the Keo representative yet again about Keo's alleged use of the Unidrop® system.

99.    Although the Keo representative confirmed that they do not currently make or use any products using the Unidrop® system, the VILOX representatives continued to demand that

Keo use VILOX's technology instead. The Keo representative refused, and the VILOX representative's demands devolved into loud yelling and screaming witnessed by other market participants.

100.    Upon information and belief, the one or more VILOX representatives timed their visit to the Keo booth at Surfaces to ensure that Keo customers were present to witness the encounter between VILOX and a Keo representative in an attempt to maximize the disruption to Keo's business. The scene caused a significant disruption, capturing attention of attendees and exhibitors, at least some of whom are potential customers and/or licensees of Mohawk Industries and/or Unilin. Indeed, the VILOX representative refused to cease his harassment of the Keo representative until the Keo representative threatened to call security.

101.    As a result of the VILOX representative's yelled demands and continued harassment, Keo informed Unilin that they will not introduce the Unidrop® technology until the present dispute is resolved.

102.    To date, Mohawk Industries and Unilin have been approached by actual and potential customers and/or licensees of Unidrop® regarding VILOX's harassment campaign. VILOX continues to demand that these customers and/or licensees sign agreements requiring payment to VILOX for their sale of Unidrop® products. The baseless harassment by VILOX has caused fear in Jiangsu Success and other actual and potential customers and/or licensees of Unidrop®.

103.    Licensees of Unilin have indicated that they are questioning whether to continue to license Unidrop® technology in the face of this harassment, regardless of VILOX's allegations lacking reasonable legal basis. Further, potential licensees of Unidrop® have indicated they will not consider licensing the Unidrop® system until the harassment ends or the matter is closed.

104. Indeed, VILOX contends that participants of the BAU and Surfaces trade shows, including those who "us[e] the Unidrop system," have signed non-assertion agreements to enable them to "utilize VILOX' U.S. patent 12,180,717." Ex. J (VILOX LinkedIn Post).

105. Mohawk Industries and Unilin are aware of one such draft non-assertion agreement that would require the party to "pay USD 0.7 for every square meter of Products sold by Beneficiary or any of its affiliates," where Products is defined to mean "flooring products with the click system marketed by Unilin under the name 'Unidrop' and any other floor panel using a click system with the same functional and design characteristics as that clock-system." Ex. K (Decno Non-Assertion Agreement) at 1.

106. Mohawk Industries and Unilin had a reasonable probability of a business opportunity with potential licensees of the Unidrop® system. To the extent any licensees decide to cease Unidrop® production under their existing license agreement or decline entering into a license agreement to use the Unidrop® system, VILOX's repeated harassment of Mohawk Industries and Unilin's customers has resulted in the loss of potential contracts and/or loss of potential licensing income.

107. As explained throughout these counterclaims, VILOX's assertion of the '717 Patent is completely baseless because of the clear invalidity of the '717 Patent. *See* Paragraphs 52-62, *see also* Mohawk's Defenses (Paragraphs 3-7).

108. Upon information and belief, the statements in VILOX's press release and correspondence and VILOX's outreach efforts were intended in bad faith to scare Mohawk Industries and Unilin's existing and prospective customers from continuing or starting to do business with Mohawk or Unilin because they might be sued, or because they fear that Mohawk

Industries and Unilin will be driven out of business or no longer be able to offer the Unidrop®
system as a result of an injunction.

109.    VILOX's present lawsuit against Mohawk is not driven by a good faith desire to
enforce its intellectual property, but instead by a bad faith intent to hurt Mohawk Industries'
business in the marketplace, disparage its reputation, take existing and prospective customers from
Mohawk Industries and/or Unilin, and prevent additional Unidrop® products from entering the
market.

**FIRST COUNTERCLAIM**
**DECLARATION OF NON-INFRINGEMENT OF THE '717 PATENT**

110.    Counterclaim-Plaintiffs repeat and incorporate by reference the foregoing
paragraphs of this Answer and Counterclaims, as if fully set forth herein.

111.    Based on VILOX's filing of this action and Mohawk Industries' Second Defense,
an actual controversy has arisen and exists between the parties as to whether Mohawk infringes
U.S. Patent No. 12,180,717 (the "'717 Patent" or "Asserted Patent").

112.    Counterclaim-Plaintiffs do not and have not infringed, either directly, indirectly
(whether individually or jointly), contributorily, by inducement, or under the doctrine of
equivalents, or in any other manner, any valid and enforceable claim of the '717 Patent. VILOX's
Complaint fails to articulate a sufficient basis for alleging that Mohawk Industries' and Menard's
products meet all the limitations of any claim of the Asserted Patent.

113.    Pursuant to Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.,
Counterclaim-Plaintiffs respectfully request a declaration by the Court that they do not infringe
the '717 Patent.

## SECOND COUNTERCLAIM
## <u>DECLARATION OF INVALIDITY OF THE '717 PATENT</u>

114.    Counterclaim-Plaintiffs repeat and incorporate by reference the foregoing paragraphs of this Answer and Counterclaims, as if fully set forth herein.

115.    Based on VILOX's filing of this action and Mohawk Industries' Third Defense, an actual controversy has arisen and exists between the parties as to the validity of the '717 Patent.

116.    In its Complaint, VILOX alleges that the '717 Patent is valid.

117.    Counterclaim-Plaintiffs deny that the '717 Patent is valid and asserts that one or more claims of the '717 Patent is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

118.    As explained in Paragraphs 41-62 above, the fold-down locking profile VILOX accused of infringement in its Complaint was in public use, on sale, or otherwise publicly available prior to the earliest-claimed priority date of the '717 Patent, December 13, 2019.

119.    VILOX alleges that the Mohawk Home Expressions floor panel (the "Representative Accused Product") infringes the '717 Patent. D.I. 11, ¶ 30.

 

D.I. 11, ¶ 30.

120.    A comparison of the Mohawk Home Expressions floor panel VILOX has accused of infringement in its Complaint and a product made using the P142 profile is shown below.

| Mohawk Home Expressions (D.I. 11, Ex. F) | P142 Profile |
|---|---|



121.    Under VILOX's interpretation that the Mohawk Home Expressions Representative Accused Product practices each and every limitation of the '717 Patent (it does not), products containing the fold-down locking profile features of the Representative Accused Product were on sale or otherwise publicly available as early as June 2019, as described in Paragraphs 33-40 and 50-62 above.

122.    Additionally, the Unidrop® system was patented and/or described in a printed publication before the effective filing date of the purported invention of the '717 Patent. For example, as described in Paragraphs 30-31 above, U.S. Provisional Application No. 62/942,861 describing the Unidrop profile was filed on December 3, 2019, and published as International Publication WO 2021/111310.

123.    The Unidrop® system was also in public use, on sale, or otherwise available to the public before the effective filing date of the purported invention of the '717 Patent. For example, as described in Paragraphs 33-40 above, videos and news publications describing the Unidrop® system were available online as early as January 2020. The Unidrop® profile was also displayed at trade shows in January 2020.

124.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and 35 U.S.C. § 100 *et seq.*, Counterclaim-Plaintiffs respectfully request a declaration by the Court that the '717 Patent is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

## THIRD COUNTERCLAIM
## UNFAIR COMPETITION UNDER § 43(a) OF THE LANHAM ACT

125.    Counterclaim-Plaintiffs repeat and incorporate by reference the foregoing paragraphs of this Answer and Counterclaims, as if fully set forth herein.

126.    VILOX has engaged in unfair competition under 15 U.S.C. § 1125 (Lanham Act § 43(a)).

127.    As alleged above, VILOX commenced this objectively baseless action and subsequently disseminated its false infringement allegations to the public at large, Mohawk Industries and Unilin's customers, and prospective customers in bad faith and for improper ulterior purposes, specifically for the purpose of causing economic harm to Mohawk Industries and its subsidiaries, including Unilin.

128.    The press release that VILOX published constitutes commercial advertising or promotion of VILOX's product and disparages Unilin's products. By way of example, the publicly disseminated press release promotes VILOX's own product by stating that "'[n]o company, regardless of size, should use VILOX' technology without proper licensing," and touts itself as "a trusted licensor.'" *VILOX files major U.S. lawsuit against Mohawk* (Jan. 1, 2025), https://vilox.com/vilox-files-major-u-s-lawsuit-against-mohawk/ (last accessed Feb. 11, 2025).

129.    The press release falsely alleges that Unilin's Unidrop® system is merely using VILOX's technology and calling it its own.

130.    Mohawk Industries and its subsidiaries, including Unilin, have current and prospective customers who are interested in licensing the technology or purchasing the products that VILOX has accused of patent infringement, as described in preceding Paragraphs 102 and 106 of Counterclaim-Plaintiffs' counterclaims.

131.    VILOX had knowledge of these current and prospective customers, as evidenced at least by VILOX's outreach to Mohawk Industries and Unilin's current and prospective customers regarding the instant litigation.

132.    VILOX, through its publication of the press release, outreach to these current and prospective customers, and other statements made to these current and prospective customers, intentionally deceived Mohawk Industries and Unilin's current and prospective customers by causing them to believe that they may be liable for infringement if they do business with Mohawk Industries and Unilin and that if they do purchase Unilin's products or license the Unidrop® technology, they may be adjudged as infringers by a court. VILOX has caused these statements to enter interstate commerce by publishing them in a press release and directly speaking to Mohawk Industries and Unilin's current and prospective customers.

133.    VILOX's misrepresentations are material and are influencing purchasers' decisions as evidenced by the fact that representatives for Mohawk Industries and Unilin's current and prospective customers have told Unilin and/or Mohawk Industries that they are intimidated by VILOX's harassing messages and are contemplating stopping the sale of the Unidrop® technology that has been accused of infringement in this litigation.

134.    By reason of VILOX's unfair competition, VILOX has caused and will continue to cause Mohawk Industries and its subsidiaries, including Unilin to suffer substantial damage to its business, market reputation, and goodwill, and VILOX's conduct may discourage additional

current and potential customers from conducting business with Mohawk and its subsidiaries, including Unilin. Such irreparable damage will continue unless VILOX is enjoined from alleging to existing and prospective customers that products utilizing the Unidrop® system infringe the '717 Patent.

135.    To the extent they are quantifiable, Counterclaim-Plaintiffs are entitled to damages in an amount to be proved at trial, including to compensate them for lost business opportunities, lost sales and profits, and attorneys' fees and expenses incurred in defending and asserting counterclaims in this action.

136.    As set forth in Paragraphs 2-7 of Mohawk Industries' Defenses and Paragraphs 89-90, 103, 107, 109 of Counterclaim-Plaintiffs' Counterclaims, no objectively reasonable basis exists for VILOX to conclude that Mohawk Industries infringed the '717 Patent, and VILOX filed the present suit with no subjectively reasonable basis to conclude that the Asserted Patents were infringed by Mohawk Industries.

## FOURTH COUNTERCLAIM
## <u>TORTIOUS INTERFERENCE WITH A BUSINESS OPPORTUNITY</u>

137.    Counterclaim-Plaintiffs repeat and incorporate by reference the foregoing paragraphs of this Answer and Counterclaims, as if fully set forth herein.

138.    VILOX has wrongfully interfered with the business opportunities of Mohawk.

139.    As alleged above, VILOX commenced this objectively baseless action and subsequently disseminated its false infringement allegations to the public at large, customers of Mohawk Industries' subsidiaries, including Unilin, and prospective customers in bad faith and for improper ulterior purposes, specifically for the purpose of causing economic harm to Mohawk Industries and its subsidiaries, among other false accusations as set forth in Paragraphs 65-109 of Counterclaim-Plaintiffs' counterclaims.

140.    Mohawk Industries and its subsidiaries, including Unilin have current and prospective customers who are interested in purchasing the products and licensing the technology that VILOX has accused of patent infringement, as described in the preceding Paragraphs 102 and 106 of Counterclaim-Plaintiffs' counterclaims. Thus, Unilin had a reasonable probability of a business opportunity with these customers.

141.    VILOX has knowledge of these current and prospective customers, as evidenced at least by VILOX's outreach to these current and prospective customers regarding the instant litigation. Thus, VILOX had knowledge that such business opportunities existed.

142.    VILOX, through its release of the press release, outreach to Unilin's customers, and statements made to Unilin's customers, intentionally interfered with Unilin's business relationships and expectancies.

143.    Due to VILOX's wrongful, intentional interference, representatives for Mohawk Industries and Unilin's current and prospective customers have told representatives for Unilin and/or Mohawk Industries that they are intimidated by VILOX's harassing messages and are contemplating stopping the sale of products or license certain technologies that have been accused of infringement in this litigation.

144.    By reason of VILOX's intentional interference, VILOX has caused and will continue to cause Mohawk Industries and Unilin to suffer substantial damage to its business, market reputation, and goodwill, and VILOX's conduct may discourage additional current and potential customers from conducting business with Mohawk Industries. Such irreparable damage will continue unless VILOX is enjoined from alleging to Mohawk Industries and its subsidiaries' existing and prospective customers that products utilizing the Unidrop® system infringe the '717 Patent.

145.    To the extent they are quantifiable, Counterclaim-Plaintiffs are entitled to damages in an amount to be proved at trial, including to compensate them for lost business opportunities, lost sales and profits, and attorneys' fees and expenses incurred in defending and asserting counterclaims in this action.

146.    As set forth in Paragraphs 2-7 of Mohawk Industries' Defenses and Paragraphs 89-90, 103, 107, 109 of Counterclaim-Plaintiffs' Counterclaims, no objectively reasonable basis exists for VILOX to conclude that Mohawk Industries infringed the '717 Patent, and VILOX filed the present suit with no subjectively reasonable basis to conclude that the Asserted Patents were infringed by Mohawk Industries.

## FIFTH COUNTERCLAIM
## COMMON LAW UNFAIR COMPETITION

147.    Counterclaim-Plaintiffs repeat and incorporate by reference the foregoing paragraphs of this Answer and Counterclaims, as if fully set forth herein.

148.    VILOX has engaged in unfair competition under Delaware common law.

149.    As alleged above, VILOX commenced this objectively baseless action and subsequently disseminated its false infringement allegations to the public at large, customers of Mohawk Industries and its subsidiaries, including Unilin, and prospective customers in bad faith and for improper ulterior purposes, specifically for the purpose of causing economic harm to Mohawk Industries, among other false accusations as set forth in Paragraphs 53-81 of Unilin's counterclaims.

150.    Mohawk Industries and its subsidiaries, including Unilin have current and prospective customers who are interested in purchasing the products and licensing the technology that VILOX has accused of patent infringement, as described in the preceding Paragraphs 102 and 106 of Counterclaim-Plaintiffs' counterclaims. Mohawk Industries and its subsidiaries, including

Unilin, had a reasonable expectancy of entering and continuing in these valid business relationships with customers.

151.    VILOX has knowledge of these current and prospective customers, as evidenced at least by VILOX's outreach to Mohawk Industries and Unilin's current and prospective customers regarding the instant litigation.

152.    VILOX, through its release of the press release, outreach to these customers, and statements made to these customers, intentionally interfered with these business relationships and expectancies. Wrongfully sending letters to customers of Mohawk Industries and its subsidiaries, including Unilin, and other of VILOX's actions, as described above, constitute unlawful and/or unfair business practices in an effort to gain an unfair competitive advantage over Mohawk Industries in violation of unfair competition under Delaware law.

153.    Due to VILOX's intentional interference, representatives for Unilin's current and prospective customers have told representatives for Unilin and/or Mohawk Industries that they are intimidated by VILOX's harassing messages and are contemplating stopping the sale of certain products or license certain technologies that have been accused of infringement in this litigation. Thus, VILOX's actions have defeated Mohawk Industries and Unilin's legitimate expectancy and caused harm.

154.    By reason of VILOX's intentional interference, VILOX has caused and will continue to cause Mohawk Industries and Unilin to suffer substantial damage to its business, market reputation, and goodwill, and VILOX's conduct may discourage additional current and potential customers from conducting business with Mohawk Industries. Such irreparable damage will continue unless VILOX is enjoined from alleging to Mohawk Industries' existing and prospective customers that products utilizing the Unidrop® system infringe the '717 Patent.

155.    To the extent they are quantifiable, Counterclaim-Plaintiffs are entitled to damages in an amount to be proved at trial, including to compensate them for lost business opportunities, lost sales and profits, and attorneys' fees and expenses incurred in defending and asserting counterclaims in this action.

156.    As set forth in Paragraphs 2-7 of Mohawk Industries' Defenses and Paragraphs 89-90, 103, 107, 109 of Counterclaim-Plaintiffs' Counterclaims, no objectively reasonable basis exists for VILOX to conclude that Mohawk Industries infringed the '717 Patent, and VILOX filed the present suit with no subjectively reasonable basis to conclude that the Asserted Patents were infringed by Mohawk Industries.

### SIXTH COUNTERCLAIM
### VIOLATION OF DELAWARE UNIFORM DECEPTIVE TRADE PRACTICES ACT

157.    Counterclaim-Plaintiffs repeat and incorporate by reference the foregoing paragraphs of this Answer and Counterclaims, as if fully set forth herein.

158.    VILOX has violated Delaware's Uniform Deceptive Trade Practices Act. 6 Del. C. § 2532(a).

159.    VILOX has engaged in deceptive trade practices, including, but not limited to, by disparaging Unilin's products by false and misleading representations of fact.

160.    As described above in Paragraphs 53-81 of Counterclaim-Plaintiffs' Counterclaims, these false and misleading representations of fact were contained in a press release disseminated to the public on January 1, 2024, and further disseminated directly by VILOX to current and prospective customers of Mohawk Industries and its subsidiaries, including Unilin. VILOX knew that it was misrepresenting facts to the public and knowingly and willfully disparaging products of Mohawk Industries' subsidiaries, including Unilin.

161.    These false and misleading representations of fact created a likelihood of confusion or misunderstanding to Unilin's customers and other potential customers in the marketplace. In fact, due to VILOX's intentional interference, representatives for Unilin's current and prospective customers have told representatives for Unilin and/or Mohawk Industries that they are intimidated by VILOX's harassing messages and are contemplating stopping the sale of certain products or license certain technologies that have been accused of infringement in this litigation.

162.    By reason of VILOX's deceptive trade practices, VILOX has caused and will continue to cause Mohawk Industries and Unilin to suffer significant damage to its business, market reputation, and goodwill, and VILOX's conduct may discourage additional current and potential clients from conducting business with Mohawk Industries. Such irreparable damage will continue unless VILOX is enjoined from alleging to the existing and prospective customers of Mohawk Industries and its subsidiaries that products utilizing the Unidrop® system infringe the '717 Patent.

163.    To the extent they are quantifiable, Counterclaim-Plaintiffs are entitled to damages in an amount to be proved at trial, including to compensate them for lost business opportunities, lost sales and profits, and attorneys' fees and expenses incurred in defending and asserting counterclaims in this action.

164.    As set forth in Paragraphs 2-7 of Mohawk Industries' Defenses and Paragraphs 89-90, 103, 107, 109 of Counterclaim-Plaintiffs' Counterclaims, no objectively reasonable basis exists for VILOX to conclude that Mohawk Industries infringed the '717 Patent, and VILOX filed the present suit with no subjectively reasonable basis to conclude that the Asserted Patents were infringed by Mohawk Industries.

## DEMAND FOR A JURY TRIAL

Counterclaim-Plaintiffs respectfully request a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaim-Plaintiffs ask this Court to enter judgment in favor of Counterclaim-Plaintiffs and against VILOX by granting the following relief:

a)    a declaration that Counterclaim-Plaintiffs do not infringe, under any theory, the Asserted Patents;

b)    a declaration that the claims of the '717 Patent are invalid;

c)    a declaration that VILOX takes nothing by its Complaint;

d)    judgment providing that the allegations of infringement made by VILOX are baseless and have been made in bad faith;

e)    judgment providing that in making such baseless allegations, VILOX is liable for tortious interference with a business opportunity, unfair competition under Delaware common law and § 43(a) of the Lanham Act, and violation of the Delaware Uniform Deceptive Trade Practices Act (6 Del. C. § 2532(a));

f)    an award of Counterclaim-Plaintiffs' actual damages resulting from the complained-of tortious interference with a business opportunity, unfair competition under Delaware common law and § 43(a) of the Lanham Act, and violation of the Delaware Uniform Deceptive Trade Practices Act herein, in an amount to be determined at trial;

g)    dismissal of VILOX's Complaint with prejudice;

h)    a finding that this case is an exceptional case under 35 U.S.C. § 285 and an award to Counterclaim-Plaintiffs of their costs and attorneys' fees incurred in this action;

i)    judgment providing that VILOX and its agents, officers, representatives, successors, assigns, and all other persons acting for, with, by, through, or under authority from VILOX be preliminarily and permanently enjoined from making any further allegations that the Accused Products and products implementing the Unidrop® system infringe the '717 Patent; and

j)      any and all further relief as the Court may deem just and proper.

_/s/ Kelly E. Farnan_

Kelly E. Farnan (#4395)
OF COUNSEL:                                  Richards, Layton & Finger, P.A.
                                             One Rodney Square
John Haynes                                  920 North King Street
John.Haynes@alston.com                       Wilmington, DE 19801
Shri Abhyankar                               (302) 651-7700
Shri.Abhyankar@alston.com                    farnan@rlf.com
Carter Babaz
Carter.Babaz@alston.com                      **_Counsel for Mohawk Industries, Inc.,_**
**ALSTON & BIRD LLP**                        **_Mohawk Carpet Distribution, LLC, IVC US,_**
One Atlantic Center                          **_LLC, and Unilin BV_**
1201 West Peachtree St. NE
Atlanta, GA 30309-3424
(404) 881-7000

Jenny J. Wang
Jenny.Wang@alston.com
**ALSTON & BIRD LLP**
555 Fayetteville Street, Suite 600
Raleigh, NC 27601
(919) 862-2200

Dated:  February 11, 2025