**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| VILOX AB<br><br>Plaintiff,<br><br>v.<br><br>MOHAWK INDUSTRIES, INC., MENARD, INC., and UNILIN BV<br><br>Defendants. | ) | C.A. No. 24-1430-JCB<br><br>JURY TRIAL DEMANDED |
| MOHAWK INDUSTRIES, INC., MOHAWK CARPET DISTRIBUTION, LLC, IVC US, LLC, and UNILIN BV,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>VILOX AB<br><br>Counterclaim-Defendant. | ) | |
| MENARD, INC.,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>VILOX AB<br><br>Counterclaim-Defendant. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF INDEFINITENESS**

# TABLE OF CONTENTS

**I. INTRODUCTION ........ 6**

**II. ARGUMENT ........ 6**

**A. Measurement Terms (Claims 1, 4, 15, 16, 20) ........ 6**

1. "distal surface of the female coupling tongue" ........ 6

2. "distal surface of the main portion of the second floor panel" ........ 9

**B. Coupling Release Channel Terms (Claims 1, 16, 18, 19, 20) ........ 10**

**C. Locking Release Terms (Claims 1, 16, 18, 19, 20) ........ 15**

**III. CONCLUSION ........ 15**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CommScope Techs. LLC v. Dali Wireless Inc.*,
10 F.4th 1289 (Fed. Cir. 2021) ....................9

*Confluent Surgical, Inc. v. Hyper Branch Med. Tech., Inc.*,
No. 17-668-LPS-CJB, 2019 WL 2897701 (D. Del. July 5, 2019)....................14

*Genzyme Corp. v. Novartis Gene Therapies, Inc.*,
No. 21-1736-RGA, 2023 U.S. Dist. LEXIS 145106 (D. Del. Aug. 18, 2023) ....................12, 13

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014)....................13

*Ironburg Inventions Ltd. v. Valve Corp.*,
64 F.4th 1274 (Fed. Cir. 2023) ....................8, 9

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014)....................11, 12

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
30 F.4th 1339 (Fed. Cir. 2022) (cited by Opp. ) ....................14

*Sight Scis., Inc. v. Ivantis, Inc.*,
No. 21-1317-GBW-SRF, 2023 WL 5287215 (D. Del. Aug. 17, 2023)....................14

*Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*,
844 F.3d 1370 (Fed. Cir. 2017)....................14

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
789 F.3d 1335 (Fed. Cir. 2015)....................13

*TVnGO Ltd. (BVI) v. LG Elecs., Inc.*,
861 Fed. Appx. 453 (Fed. Cir. 2021) ....................12

**TABLE OF EXHIBITS**

| **Exhibit** | **Description** |
|---|---|
| Exhibit A | Declaration of Mr. Lee Phillips (August 14, 2026) |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| Vilox | Plaintiff Vilox AB |
| Mohawk | Defendant and Counterclaim-Plaintiff Mohawk Industries, Inc. |
| Unilin | Defendant and Counterclaim-Plaintiff Unilin BV |
| Menards | Defendant Menard, Inc. |
| Defendants and Counterclaim-Plaintiffs | Mohawk, Unilin, and Menards together with Counterclaim-Plaintiffs Mohawk Carpet Distribution, LLC and IVC US, LLC |
| ’717 Patent | U.S. Patent No. 12,180,717 (Ex. A) |
| Mot. | Defendants’ Motion for Partial Summary Judgment of Indefiniteness |
| Opp. | Vilox’s Response in Opposition to Defendants’ Motion for Partial Summary Judgment of Indefiniteness |
| Phillips Dec. | Declaration of Mr. Lee Phillips (August 14, 2026) |
| Sorensen Dec. | Declaration of Dr. Khalid Sorensen (July 17, 2026) |

## I. INTRODUCTION

Vilox's arguments in opposition to this Motion confirm the indefiniteness of the claim terms. Further, Vilox's expert declaration should be given no weight, as it simply parrots the attorney arguments made in Vilox's brief and includes no independent expert analysis of the terms.

## II. ARGUMENT

### A. Measurement Terms (Claims 1, 4, 15, 16, 20)

Vilox's contradictory explanations of "distal surface" reinforce their indefiniteness. Tellingly, Vilox does not assert that "distal surface" has a well-known meaning. Rather, Vilox focuses on disclosures in the patent. Opp. at 10 ("An ordinary artisan would have understood 'distal surface of the female coupling tongue' in the same way the patent uses it . . . ."). But it is the patent's inconsistent description of "distal surface" that renders these terms indefinite.

#### 1. "distal surface of the female coupling tongue"

Vilox concedes the core problem: the patent's own figures point to different distal surfaces. Vilox does not dispute that throughout the patent the "distal surface of the female tongue" is described as reference numeral 44 which consistently corresponds to the rounded top edge of the female coupling tongue. Opp. at 7; '717 Patent at 12:23-24; *id.* at Figs. 1A-4, 12, 14, 18. Nor does Vilox dispute that the patent also describes "a distance D from the distal surface 44" which is measured from a different distal surface—the vertical surface that makes up the farthest edge of the female coupling tongue. Opp. at 7; '717 Patent at 12:51-57; *id.* at Fig 1B.

To avoid this inconsistency, Vilox offers contradictory definitions of the term. Vilox first argues that the "distal surface of the female coupling tongue" is the entire surface, including both the labeled rounded top edge of the female coupling tongue and the unlabeled vertical surface:



Fig.1A
Fig.1B

Opp. at 10. Vilox does not provide any support from the intrinsic record for its expanded definition. Instead, it relies on conclusory expert testimony that "[a]n ordinary artisan would have understood that 'the leader for reference numeral 44 identifies the distal end surface as a structural feature, rather than identifying the exact point from which a horizontal dimension must be taken.'" Opp. at 10 (citing Sorensen Dec. at ¶ 40). But Dr. Sorensen offers no explanation as to why the "distal surface" of this "structural feature" would be both the rounded top surface and the vertical side surface. Or why the "distal surface" of this "structural feature" would start and stop where Vilox highlights. If read as expansively as Vilox does, the top and bottom of the tongue would also appear to be part of the same continuous distal surface of the "structural feature." Regardless, Vilox's proposed construction does not resolve the ambiguity of the term. The claims require a measurement "from a distal surface." Under Vilox's construction, the measurement could be taken from any part of the distal surface it highlights above. But Vilox later argues that the measurement should be "taken from the farthest point." Opp. at 12. These contradictory positions cannot be squared with each other. Under Vilox's view, the patentee can pick and choose different "distal surface(s)" to fit an infringement theory, hiding from the public the metes and bounds of the claims.

Vilox's expert declaration does not provide any further clarity. Vilox argues that "[a]n ordinary artisan would have understood 'distal surface of the female coupling tongue' in the same way the patent uses it: to refer to the surface of the female coupling tongue that defines the end of the lower recess in the horizontal dimension." Opp. at 10 (citing Sorensen Dec. at ¶ 31, 36). But

this purported definition conflicts with the patent (which labels the "distal surface 44" as the rounded top edge of the female coupling tongue) and Vilox's own argument (which defines the "distal surface" as the entire surface including both the labeled rounded top edge of the female coupling tongue as well as the unlabeled vertical surface). Dr. Sorensen does not provide any explanation, or any other analysis, for why an ordinary artisan would understand the term to mean measuring from the unlabeled farthest point as opposed to measuring from where the patent labels the distal surface. Based on the inconsistent use of the term in the patent specification—made apparent through Vilox's contradictory arguments presented in its brief—an ordinary artisan reviewing the term in light of the patent would not be reasonably certain where the claimed measurement "from distal surface" should begin. *See* Phillips Dec. at ¶¶ 45-50.

Vilox's reliance on *Ironburg Inventions* is misplaced. There, the dispute centered around the term "substantially the full distance between the top edge and the bottom edge." *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1287 (Fed. Cir. 2023). The court noted that the specification provided "some guidance as to where to measure, including in figures identifying exemplary top and bottom edges" as well as specific guidance on what length an embodying device must have to meet the purpose of the invention. *Id.* at 1290-91. Thus, the Court held the claim was not indefinite. Here, no such guidance exists. The specification instead provides entirely inconsistent disclosures on where to measure the distal surface from. Importantly, the claims in *Ironburg Inventions* did not require precise measurements as they do here (i.e., from a distal surface thereof to between 60% to 90% of the length of the female coupling tongue). They simply required "substantially the full distance between the top edge and the bottom edge." Thus, that the court found the term could be reasonably understood by comparing embodiments to the purpose of the claimed invention—i.e., "[t]hose embodiments that allow the claim's purpose to be

effectuated are within the scope of the claims, while those that do not are not." *Id*. at 1288. That same analysis here cannot lead to a reasonable understanding of where to make the precise claimed measurements from. Phillips Dec. at ¶¶ 51 (explaining that the purpose of the claimed invention cannot be used to determine what measurements are within the scope of the claims).

Finally, Vilox's argument that there are fact issues regarding *infringement* is a red herring. Vilox does not meaningfully address the inconsistencies between its definition and its infringement contentions or that even small changes in where the distal surface measurement is taken are outcome-determinative. Mot. at 13 (comparing Vilox's measurement of 61% (inside the claim scope) to 55% (outside the claim scope) if measured from where the patent labels the distal surface 44). It is Vilox's own inconsistent application of the terms for infringement, on the one hand, and to avoid invalidity, on the other, that confirms the indefinite nature of these terms. *See CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1299 (Fed. Cir. 2021) ("This case falls squarely within the principle that a patent may not, like a nose of wax, be twisted one way to avoid anticipation and another to find infringement") ( citation modified). Whether there are issues of material facts as to infringement under Vilox's interpretation is irrelevant to the present Motion.

**2. "distal surface of the main portion of the second floor panel"**

Vilox's arguments as to the distal surface of the main portion of the second floor panel directly conflict with its arguments for the distal surface of the female coupling tongue. Vilox argues that "the 'distal surface' of the 'main portion' of the second floor panel is the farthest edge." Opp. at 13-14. As support, Vilox relies entirely on its expert who states, without explanation or analysis, that "the 'distal surface' of the 'main portion' of the second floor panel is the farthest edge before the male coupling geometry (i.e., 'joining system') begins." Opp. at 13-14 (citing Sorensen Dec. at ¶ 45). This explanation fails to resolve the ambiguity for the same reasons as above. The patent does not describe where the "male coupling geometry" begins. And, critically,

this proposed definition does not address whether the "distal surface" is the entire surface of a "structural feature" including, for example, the curved upper portion (like Vilox argues for on the female side), or just the vertical portion. This internal inconsistency in Vilox's interpretation of these two terms further demonstrates their indefiniteness.

Vilox also does not address that its proposed definition conflicts with its interpretation of the claim as it relates to infringement. In its infringement contentions, Vilox contends that the "distal surface of the main portion of the second floor panel" is at an intermediate surface closer to the main portion.




Mot., Ex. C at 40. If as Vilox argues, the distal surface for the male coupling tongue is "the farthest surface of the main portion before the male tongue" (Opp. at 8) then its infringement contentions, which point to an intermediate surface closer to the main portion, would be inconsistent with its proposed construction. *See* Mot., Ex. C at 40. And, once again, whether there are fact issues regarding *infringement* has no bearing on the indefiniteness at issue here. Rather, Vilox's inconsistent application simply illustrates the illogical result of the terms' indefinite scope.

### B. Coupling Release Channel Terms (Claims 1, 16, 18, 19, 20)

By Vilox's own admission, the coupling release channel and coupling release tool are interdependent on each other, and neither has objective boundaries.

*First*, Vilox emphasizes the circular nature of the claims that renders them indefinite. The

coupling release channel and the coupling release tool are co-dependent on one another. *See, e.g.,* ’717 Patent at Claim 1 (“a coupling release channel being arranged between the locking protrusion and an upper surface in the groove in the second floor panel, ***such that the coupling release tool is placeable in the coupling release channel*** . . .”). Based on this claim language, Vilox provides that “[t]he tool’s outer dimensions are, therefore, defined by the size of the channel.” Opp. at 19. Further, Vilox asserts that “[a]ny tool that fits in the coupling release channel meets this limitation, any tool that does not, does not.” *See id.* At the same time, Vilox provides “the coupling release channel is not limited by size or shape, so long as it is bounded by the upper surface of the groove 71 and the female locking protrusion 31, as claimed.” *See* Opp. at 16-17. Thus, Vilox admits that there is no objective boundary to the size or shape of either the coupling release tool or the coupling release channel, and highlights this by arguing that one unbounded element defines the other. Vilox cannot be permitted to expand the claims of the ’717 Patent to a limitless scope, which results in the inability for potential infringers to understand the true scope of the claims. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909-911 (2014).

*Second*, Vilox’s discussion of intrinsic evidence does not support its position. Vilox first points to the patent claims stating that the coupling release channel is located between “the locking protrusion and the upper surface in the groove in the second panel.” *See* Opp. at 15 (citing ’717 Patent at cls. 1, 20). These citations offer no objective boundaries to the size or shape of the coupling release channel. Similarly, Vilox points to “distance M” which describes the coupling release channel. *See* Opp. at 16 (citing ’717 Patent at 11:13-18). Vilox itself admits that “distance M” defining the coupling release channel is *optional* as it is described in reference to only one embodiment. *See* Opp. at 16 (citing ’717 Patent at 11:13-18). Further, adopting this limitation would directly contradict Vilox’s own assertions that “the coupling release channel is not limited

by size or shape, so long as it is bounded by the upper surface of the groove 71 and the female locking protrusion 31, as claimed." *See* Opp. at 16-17. The applicant knew how to claim relative dimensions and did so in other claim limitations. *See* Mot. at 17.

Vilox also fails to address the indefiniteness caused by the conflicting intrinsic evidence. Vilox annotates various figures to demonstrate where the coupling release channel is located and relies on a singular section of the specification describing how the coupling release channel exists in a locked state. *See* Opp. at 16 (citing '717 Patent at 11:5-9, 11:13-17); *see also* Opp. at 15-17, *see also* Phillips Dec. at ¶¶ 56-59. But it fails to acknowledge other figures showing the coupling release channel between two separated panels. *See* Mot. at 18 (citing figure 2 and figure 3). Based on the conflicting description of the specification and the figures, it is unclear what state the panels must be in for the coupling release channel to exist. *See TVnGO Ltd. (BVI) v. LG Elecs., Inc.*, 861 Fed. Appx. 453, 458 (Fed. Cir. 2021) (affirming a finding of indefiniteness in the face of inconsistencies between the specification and the claims of the patent); Phillips Dec. at ¶ 64. Further, Mr. Phillips testified that "coupling release channel" is not a term of art, and a POSITA would have to look to the patent specification and prosecution history to understand its meaning. Phillips Dec. at ¶ 52. Dr. Sorensen did not testify otherwise. Because the specification and figures are in conflict, and because the intrinsic evidence does not offer clear boundaries as to the scope of the coupling release channel, this term is indefinite. *See Nautilus, Inc.*, 572 U.S. at 910.

As to the coupling release tool, the specification's exemplary embodiments of a coupling release rod do not resolve the indefiniteness where there is no reasonable certainty as to claim scope. *See Genzyme Corp. v. Novartis Gene Therapies, Inc.*, No. 21-1736-RGA, 2023 U.S. Dist. LEXIS 145106, at *26-28 (D. Del. Aug. 18, 2023); *see also* Phillips Dec. at ¶¶ 65-70. Mr. Phillips testified that "coupling release tool" is not a term of art, and a POSITA would have to look to the

patent specification and prosecution history to understand its meaning. Phillips Dec. at ¶ 52. Dr. Sorensen did not testify otherwise. Further, Vilox admits that the size of the coupling release tool is defined in relation to the coupling release channel which "is not limited by size or shape." Opp. at 16. Because these circular descriptors, by Vilox's admission, provide no objective boundaries to the size or shape of either feature, the terms are indefinite. *See Genzyme Corp.*, 2023 U.S. Dist. LEXIS 145106, at *26-28 (finding claim term indefinite where "circular definition fails to provide a POSITA with reasonable certainty…").

*Third*, Vilox's infringement theories illustrate the unclear boundaries provided by the indefinite terms. *See* Mot. at 18-19. Vilox alleges that there is a coupling release channel in the Accused Products, but it fails to identify any corresponding coupling release tool. This contradicts Vilox's position that the coupling release tool and coupling release channel are not indefinite because they define each other. *See* Opp. at 19. Vilox has essentially interpreted the claim terms to cover any gap in the coupling parts of two floor panels. *See* Mot. at 18-19. This Motion does not address the merits of Vilox's infringement theories. *See* Opp. at 18. Rather, Vilox's infringement theories demonstrate that its claim construction position results in uncertain claim scope lacking objective boundaries. Phillips Dec. at ¶¶ 61-63.

*Fourth*, Vilox's other arguments do not resolve the indefiniteness inquiry. Vilox faults Defendants' lack of expert testimony supporting its positions. *See* Opp. at 14. However, the indefiniteness determination does not always require expert testimony. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370, n.6 (Fed. Cir. 2014). Dr. Sorensen's testimony cited by Vilox contains merely conclusory statements which parrot Vilox's Response Brief and offer no analysis as to what a POSITA would have understood at the time of the invention. *See* Sorensen Dec. at ¶¶ 50-64. Dr. Sorensen's statements should be given no weight. *See Teva Pharms. USA, Inc. v.*

*Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015) ("A party cannot transform into a factual matter the internal coherence and context assessment of the patent simply by having an expert offer an opinion on it."). Nonetheless, Mohawk submits herewith testimony from Mr. Phillips explaining that these terms are not terms of art, and to ascertain their meaning, a POSITA would have to look to the intrinsic record, which fails to offer objective boundaries. *See generally* Phillips Dec.

Vilox's cited authority is similarly unavailing. *See* Opp. at 17-18. Vilox ignores that the Federal Circuit has cautioned that its holding in *Sonix* "does not mean that the existence of examples in the written description will always render a claim definite, or that listing requirements always provide sufficient certainty." *Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1380 (Fed. Cir. 2017) (cited by Opp. at 17). Vilox's other cited cases found terms indefinite because, unlike here, the specification did provide objective boundaries. *See Sight Scis., Inc. v. Ivantis, Inc.*, No. 21-1317-GBW-SRF, 2023 WL 5287215, at *4 (D. Del. Aug. 17, 2023) (finding term not indefinite where it was clearly defined in the specification) (cited by Opp. at 18); *Confluent Surgical, Inc. v. Hyper Branch Med. Tech., Inc.*, No. 17-668-LPS-CJB, 2019 WL 2897701, at *8 (D. Del. July 5, 2019) (terms were not indefinite where claims and specification "provide some standards or boundaries for a POSA to use as guideposts when assessing whether the claim limitations are met.") (cited by Opp. at 18); *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1349 (Fed. Cir. 2022) (the terms "resilient" and pliable" were not indefinite as the specification offered exemplary materials which would be resilient and pliable) (cited by Opp. at 17). In contrast, the intrinsic record here does not provide sufficient guidance to determine the space needed or the state the panels must be in for a coupling release channel to exist, which renders the boundaries of the coupling release tool equally unbounded.

*Fifth*, Vilox cannot recapture claim scope by alleging that claim 16 claims two floor panels,

when the preamble is clear: "A floor panel." *See* '717 Patent at Claim 16. Other claims do not suffer from this problem. *See, e.g.,* '717 Patent at Claim 1, Claim 20. Further, the claim offers little to no description of this second floor panel, so a POSITA would not have reasonable certainty as to what is required of the second floor panel to form the coupling release channel. Vilox's assertion that this is a claim construction argument that has been waived is misplaced. *See* Opp. at 23. The "coupling release channel" recited in Claim 16 is indefinite, because a coupling release channel cannot exist within a singular floor panel. *See* Mot. at 23; *see also* Phillips Dec. at ¶¶ 53-55, 60.

### C. Locking Release Terms (Claims 1, 16, 18, 19, 20)

Vilox's explanation for what is required by this term creates the same ambiguity that renders it indefinite. Vilox argues that this term "requires *sufficient* depression of the female coupling tongue to remove the locking engagement between the male and female coupling tongues." Opp. at 24 (emphasis added). But Vilox contradicts itself in also arguing that other unclaimed actions—such as pushing the second flooring panel upwards—can be combined with depressing the female coupling tongue to effectuate the claimed release. Opp. at 24. It is this contradiction that leaves the claim unbounded. Neither the intrinsic record, nor Vilox's expert, provide any guidance for what is "*sufficient* depression of the female coupling tongue" to unlock the tongues. And, as Vilox concedes, because other unclaimed actions can be combined with depressing the female coupling tongue to unlock the tongues, the metes and bounds of the claim term are unknowable. Phillips Dec. at ¶¶ 71-76. This ambiguity leaves the public guessing as to how much the female coupling tongue must be depressed to meet the claim limitation. Vilox's answer to this question—that *sufficient* depression is required—only further muddies the waters.

## III. CONCLUSION

For these reasons, Defendants and Counterclaim-Plaintiffs respectfully request that the Court find that the '717 Patent is indefinite.

OF COUNSEL:

John Haynes
John.Haynes@alston.com
Shri Abhyankar
Shri.Abhyankar@alston.com
Eric Pettis
Eric.Pettis@alston.com
Carter Babaz
Carter.Babaz@alston.com
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree St. NE
Atlanta, GA 30309-3424
(404) 881-7000

Dated: August 14, 2026

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Counsel for Mohawk Industries, Inc., Mohawk Carpet Distribution, LLC, IVC US, LLC, Unilin BV, and Menard, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2026, I caused the foregoing to be served upon the following in the manner indicated:

**BY ELECTRONIC MAIL**
Daniel M. Silver
Alexandra M. Joyce
Amy R. Harriman
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
Michael E. Kudravetz
Finnegan, Henderson, Farabow,
Garrett & Dunner LLP
Two Seaport Lane
Boston, MA 02210

**BY ELECTRONIC MAIL**
Smith R. Brittingham IV
Jonathan J. Fagan
Abhinav Garg
Finnegan, Henderson, Farabow,
Garrett & Dunner LLP
901 New York Avenue, NW
Washington, DC 20001

**BY ELECTRONIC MAIL**
Erik R. Puknys
Finnegan, Henderson, Farabow,
Garrett & Dunner LLP
Stanford Research Park
3300 Hillview Avenue, 2nd Floor
Palo Alto, CA 94304

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)